IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BENJAMIN NEWSOME, Administrator of
the Estate of Joshua Johnson,

                    Plaintiff,

v.                                             Civil Action No. 2:14cv94

MATTHEW WATSON,

And

MATHEW WILLIAMS,

                    Defendants.

## SECOND AMENDED COMPLAINT

**COMES NOW** the Plaintiff (hereinafter "Plaintiff" or "Newsome"), by counsel, and

moves this court, by second amended complaint pursuant the May 28, 2014 Order of this Court,

for judgment and an award of execution against the Defendants, Matthew Watson and Mathew

Williams (hereinafter collectively "Defendants" or individually and respectively "Watson" and

"Williams"), jointly and severally in the sum of SEVEN MILLION DOLLARS ($7,000,000.00)

by reason of the following:

Parties

       1.      The Defendants are, or were at all relevant times, employed as police officers of

the City of Norfolk, Virginia.

       2.      Newsome was qualified as Administrator of the Estate of Joshua A. Johnson on,

or about, June 10, 2013 in the Norfolk Circuit Court. The decedent, Joshua A. Johnson

(hereinafter "Johnson" or the "Decedent"), was the twenty-two year old son of Newsome.  Both

1

Newsome and Johnson were Norfolk, Virginia residents and citizens of the United States at all relevant times.

<u>Count I- 42 U.S.C. §1983</u>

3.      The plaintiff incorporates herein the allegations of Paragraphs 1 and 2 above.

4.      Johnson was shot and killed by the excessive and unreasonable use of deadly force by the Defendants on May 20, 2013 in, or around, the drive-through lane of a bank located in the 2000 block of Colonial Avenue in the City of Norfolk, Virginia at the corner of Colonial Avenue and 21st Street. Johnson was the driver of a car in the closest drive-through lane to the bank building, at approximately 2:40 p.m. with the bank building and cashier to his immediate left and a brick column and a raised curb island separating the next lane over to his right.  The Defendants were arresting Johnson for an alleged non-violent property crime. Defendants barricaded the vehicle that Johnson was operating by pulling their police vehicle in front of Johnson's car so that reverse was his only means of egress.  Directly behind the Johnson car at a short distance was another raised curb, sidewalk and plantings, so that if the car went directly in reverse without angling, the car would run into these obstacles. Williams by agreement with Watson got out of the police car and approached the Johnson car by sneaking up on it after emerging from behind the building at the rear of Johnson's car. Williams and Watson violated safety rules of police procedure to the extent that Williams put himself in harm's way walking directly and closely near a vehicle knowing that its only means of egress was to back-up. Watson violated safety rules of police procedure, by among other things, firing his weapon with his own fellow officer directly in the line of fire. Watson shot Williams in the same hail of bullets with which Watson killed Johnson.

2

5.      At no point was Johnson armed, nor did he appear to be armed, nor did he at any point make a threatening gesture toward anyone, including the Defendants.   At no point did Johnson act aggressively toward the Defendants, nor did Johnson act in a way to give either Defendant reason to believe that Johnson presented a significant risk of serious bodily harm.   In fact, just prior to the shooting, Johnson had a relaxed, casual, and nonthreatening appearance and posture.

6.      At no point before or during the subject shooting was Johnson's passenger aware of Williams' presence sneaking up from behind the car.   Upon information and belief, Johnson was at no point aware that Williams was present at the scene. Williams and Watson agreed to have Williams conceal himself from Johnson's view by using the edge of the bank building to Johnson's rear.

7.      Just prior to the shooting, Watson's police cruiser was to the front of Johnson's car, the bank building structure was to the left, and the curbed island and column was to the right of Johnson's vehicle, which tightly confined the Johnson vehicle.   Also, the drive-through lane in which the Johnson vehicle was parked had an abutting curb with a curve/teardrop shape, which extended to the rear of the Johnson vehicle and past the edge of the bank building.

8.      At no point did Johnson drive his motor vehicle toward Watson.   Prior to backing-up his vehicle, Johnson checked his rearview mirror and looked over his right shoulder before slowly backing away from Watson, who followed after the vehicle with his service weapon draw.   Watson was able to keep pace on foot while walking toward the slowly backing Johnson vehicle.

3

9.      At all relevant times, Johnson operated his vehicle at a speed, and in a manner, that did not present a threat to the Defendants, and the surrounding configuration of the bank building, drive-through and parking lot did not permit high speed operation of the vehicle.

10.     When Johnson began to drive his car in reverse, Defendant Williams was a sufficient distance from the vehicle as it moved slowly backward that it did not pose a significant threat of serious bodily harm to anyone, nor did it present circumstances in which Watson reasonably should have believed that Johnson presented a significant threat of serious bodily harm to Williams.  In fact, just prior to Johnson driving in reverse to flee the scene, Williams watched from several feet away from the edge of the building, which was several yards from the rear of the Johnson vehicle, creating a large and safe distance between the rear of the Johnson vehicle and Williams.  Based on his statement, Williams left that position of safety and approached the vehicle in an unsafe and unreasonable fashion.

11.     At no point did Johnson intend to harm anyone as he slowly backed-up his car. Watson knew that firing his weapon under the circumstances was unconstitutional and in violation of a clear rule that he has admitted he understood in his prepared statement.  The clear rule is that the police cannot use deadly force on an unarmed and non-threatening arrestee even if fleeing.  It was unreasonable for Watson under the circumstances to believe that firing his weapon would effectively prevent harm, especially when he knew Williams was in his line of fire.   Any harm inflicted upon Williams was caused by a bullet fired from Watson's gun, and not the Johnson vehicle.  Based on the statement of Williams, the car did not cause any serious bodily injury.

12.     To the extent that Williams was even close to the path of the reversing Johnson vehicle, Williams approached from the edge of the bank far behind the Johnson vehicle. Williams' approach was also from Johnson's driver's side, which was Johnson's blind spot.

13.      Williams effectively caused and set in motion Watson's use of deadly force, when Williams left a position of complete safety shielded by the edge of the bank building, which was a distance of several yards to the rear of the Johnson vehicle, and approached the reversing Johnson car. Williams unreasonably created the circumstances which Watson used as a pretext to explain the improper deadly force. The Defendants' plan to arrest Johnson had Williams leave a position of safety and Johnson had no opportunity to react to Williams' presence.  Williams unreasonably placed himself near the path of the Johnson's vehicle, when he knew his actions could prompt Watson to use deadly force. The policemen acted in concert in an unprofessional, unconstitutional, and improper manner in their approach to this suspect.

14.     The Defendants, jointly and severally, caused Johnson to be shot to death as part of an unreasonable execution of an arrest or seizure of Johnson's person within the meaning of the United States Constitution and the Fourth Amendment thereto.  Defendants acted under color of law and their acts give rise to claims under 42 U.S.C. §1983. This excessive and unreasonable use of deadly force killing an unarmed young man were the result of errors and recklessness on the part of the police.  The reckless actions of the Defendants in concert constituted an unreasonable and unconstitutional seizure of the person of Johnson which directly and proximately caused the wrongful death of Johnson.

<u>Count II- Battery</u>

15.     The plaintiff incorporates herein the allegations of Paragraphs 1 through 14 above.

16.     Defendant Watson, without just cause or provocation, committed a battery on Johnson in violation of Virginia law, by harmful, unlawful, and offensive contact to the decedent proximately resulting in the wrongful death of Johnson through shooting.

Damages

17.     The plaintiff incorporates herein the allegations of Paragraphs 1 through 16 above.

18.     Johnson has statutory beneficiaries left behind including his parents and siblings as follows:

| Name | Relationship | Date of Birth |
|------|--------------|---------------|
| Benjamin Newsome | Father | 08/17/1959 |
| Charlene Johnson | Mother | 07/23/1961 |
| Charles Johnson | Brother | 10/15/1979 |
| Darrell Newsome | Brother | 11/29/1980 |
| Caprice Johnson | Sister | 05/10/1982 |
| William Johnson | Brother | 10/28/1983 |
| Benjamin Johnson | Brother | 01/22/1987 |
| Marie Johnson | Sister | 04/04/1989 |
| Jahmal Newsome | Brother | 02/12/1995 |

19.     As a result of the wrongful death of Johnson, the statutory beneficiaries have suffered harms and losses, past and future, including those allowed by statute under Virginia Code §8.01-52 including potentially the following: funeral expenses, medical costs, loss of income to and services for the Decedent's statutory beneficiaries, as well as sorrow and anguish

from the loss of the Decedent, among other losses.  As a direct and proximate result of the wrongful death, Plaintiff's Decedent's statutory beneficiaries have all suffered tremendous sorrow, mental anguish, as well as loss of society, solace, companionship, comfort, guidance, kindly offices, and advice of the Decedent.

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in the sum of SEVEN MILLION DOLLARS ($7,000,000.00), and his costs in this matter as expended.

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.

> BENJAMIN NEWSOME,
> Administrator of the Estate of
> JOSHUA JOHNSON
>
> _____/s/_____
> John M. Cooper, Esquire
> William F. O'Mara, Jr., Esquire

John M. Cooper, Esquire
Virginia State Bar No. 29064
jcooper@cooperhurley.com
William F. O'Mara, Jr.
Virginia State Bar No. 77146
bomara@cooperhurley.com
COOPER HURLEY
2014 Granby Street, Suite 200
Norfolk, Virginia 23517
757-455-0077
757-455-8274 (facsimile)
*Counsel for Plaintiff*

<u>Certification</u>

I hereby certify that on this 18th day of June, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Melvin Wayne Ringer

Chief Deputy City Attorney
Virginia State Bar No. 20141
Wayne.ringer@norfolk.gov
Tasha D. Scott
Assistant City Attorney
Virginia State Bar No. 68643
Tasha.scott@norfolk.gov
City Attorney's Office
810 Union Street
Norfolk, Virginia 23510
757-664-4215
757-664-4201 (facsimile)
*Counsel for Defendants*

_____/s/_____
John M. Cooper, Esquire
William F. O'Mara, Jr., Esquire

8