IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BENJAMIN NEWSOME, Administrator of
 the Estate of Joshua Johnson

     Plaintiff,

     v.                         Civil Action No. 2:14cv94

MATTHEW WATSON and MATHEW WILLIAMS,

     Defendants.

BRIEF IN SUPPORT OF MOTION TO DISMISS COUNT I OF
SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

     Defendants Matthew Watson and Mathew Williams, by counsel, in support of their Motion to Dismiss Count I of the Second Amended Complaint Pursuant to Rule 12(b)(6), say as follows:

FACTS

     As he has done in earlier versions of his Complaint, plaintiff alleges facts leading up to the acts challenged, but he does not say what he contends the facts were at the moment that Officer Watson began to use deadly force. The great number of additional facts he now alleges do not clarify his claim, they add to the confusion.

     He alleges that Williams violated safety rules by putting "himself in harm's way walking directly and closely *near* a vehicle knowing that its only means of egress was to back-up."  Second Amended Complaint, ¶4 [italics added].  Compare this with the allegations of the original Complaint, ¶3, and the Amended Complaint, ¶4: "putting himself in harm's way walking directly and closely *behind* a vehicle knowing that its only means of egress was to back up."  There is some plausibility to an allegation that one might be in a place of danger if one were *behind* a vehicle knowing it would back up, but the plausibility of being in a place of danger just because one is *near* a

1

vehicle that might back up is less clear.  Does plaintiff now mean to contend that Williams was not behind the Johnson vehicle?

Perhaps this amendment from *behind* to *near* is made to support plaintiff's new allegation that, "Upon information and belief, Johnson was at no point aware that Williams was present at the scene."  Second Amended Complaint, ¶6.  The former allegation that Williams was "behind" the vehicle, taken together with the allegation that, "Prior to backing-up his vehicle, Johnson checked his rearview mirror and looked over his right shoulder before slowly backing away from Watson," (Second Amended complaint, ¶8) would render implausible the contention that "Johnson was at no point aware that Williams was present at the scene", because a person looking in his rearview mirror and then looking over his shoulder would see a person who was "behind" his vehicle.

The only other allegations plaintiff makes about Williams' locations are that Williams was a "large and safe distance between the rear of the Johnson vehicle and Williams."  Second Amended Complaint, ¶10.  And "To the extent Williams was even close to the path of the reversing Johnson vehicle, Williams approached from the edge of the bank far behind Johnson's vehicle.  Williams' approach was also from Johnson's driver's side, which was Johnson's blind spot."  He says, "Williams left a position of complete safety . . . and approached the reversing Johnson car."  Second Amended Complaint, ¶13.  There is no very clear allegation that Williams was ever behind the Johnson car.  There is no allegation at all about where Williams was at the time the shooting started.

Although he repeatedly alleges that Williams left a place of safety, he also repeatedly alleges that Johnson was backing up "slowly".  Second Amended Complaint, ¶¶8, 11.  And he alleges that, "*At all relevant times*, Johnson

operated his vehicle at a speed, and in a manner, that did not present a threat to the Defendants." Id., ¶9 [italics added].

Plaintiff says, "It was unreasonable for Watson under the circumstances to believe that firing his weapon would effectively prevent harm." Id., ¶11. And he alleges, "Williams unreasonably created the circumstances which Watson used as a pretext to explain the improper deadly force." Second Amended Complaint, ¶13. He sums up his factual contentions about Williams by saying, "Williams unreasonably placed himself near the path of Johnson's vehicle, when he knew his actions could prompt Watson to use deadly force." Second Amended Complaint, ¶ 13 [emphasis added].

To support his allegations that the officers acted in concert, it is alleged that, "Williams by agreement with Watson got out of the police car and approached the Johnson car by sneaking up on it after emerging from behind the building at the rear of Johnson's car." Second Amended Complaint, ¶4. "Williams and Watson agreed to have Williams conceal himself from Johnson's view by using the edge of the bank building to Johnson's rear." Id., ¶ 6. "The Defendants' plan to arrest Johnson had Williams leave a position of safety . . . ." Id., ¶13. The Second Amended Complaint does not rise so high as alleging that the officers conspired to surround the Johnson vehicle with the plan to make it appear as though Williams was in danger so that Watson could shoot Johnson.

**ARGUMENT**

As defendants have argued from the beginning, plaintiff must plead facts, and not conclusions, which present a plausible case for a constitutional violation. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Plaintiff's original Complaint, amended without change to Count I in his Amended Complaint, alleged insufficient facts to state a claim. Plaintiff

now alleges more facts, but they do not clarify his claim, they confuse it, and they do not make it more plausible.

A deficiency with the earlier iterations of the complaint was that plaintiff placed Williams in harm's way behind Mr. Johnson's vehicle but never alleged that the vehicle backed up.  Now, he alleges that the vehicle backed up "slowly" in an effort to flee, at all times being operated so as to present no danger to anyone, but he has taken Williams from behind the vehicle to no clearly explained location.  And he says nothing about who was where when the shooting started.

In parts of his Second Amended Complaint, plaintiff says Mr. Johnson was backing *slowly* and operating his vehicle in a way that presented no threat to defendants, and casts some doubt on whether Williams was in the path of the car ("To the extent that Williams was even close to the path of the reversing Johnson vehicle … ."  ¶12).  These allegations, coupled with the lack of any clear allegation that Williams was behind the backing vehicle, might suggest that Williams was in no danger, so that Watson had no reason to fire his weapon at Johnson.  If so, Williams would have no liability for creating the situation in which Watson fired.  But plaintiff alleges that, "Williams effectively caused and set in motion Watson's use of deadly force, when Williams left a position of complete safety shielded by the edge of the bank building, which was a distance of several yards to the rear of the Johnson vehicle, and approached the reversing Johnson car."  This is a conclusory allegation which contradicts plaintiff's factual allegations. Plaintiff alleges that Watson used Williams' actions as a "pretext" to justify the deadly force.  It could be a "pretext" only if Williams was in no danger at the time of the shooting.

On the other hand, plaintiff goes to lengths to contend that Williams acted in a way that caused the shooting, alleging repeatedly that he left a

position of complete safety and acted unreasonably in coming from behind the
edge of the bank building, but there is no allegation about what the facts
were when the shooting started.  Was Williams in the path of the reversing
car?  How close was he to it?  Had the car hit Williams?  Where was Officer
Williams when the shooting started?

The court, in its Memorandum Opinion and Order of May 28, 2014, said,
"The relevant facts concern the officers' placement at the scene and the
movement of Johnson's vehicle *immediately prior to the shooting*.  This
evidence directly bears on whether Officer Watson had probable cause to
believe that Officer Williams was in danger and whether shooting Johnson was
reasonable under the circumstances.  . . . Plaintiff does not indicate that
Johnson was trying to flee the scene in a manner that did not pose a
significant threat of serious injury to anyone by suggesting that Officer
Williams was a sufficient distance from the vehicle as it moved in reverse or
that Johnson was not making any threatening gesture toward the officers *when
he was shot*. Plaintiff does not present factual content to establish that the
officers manufactured the circumstances giving rise to the shooting where a
reasonable officer in Officer Watson's position would not have probable cause
to believe that Johnson posed a significant threat of death or serious injury
to the officer or others."  Memorandum Opinion and Order at 5-6 [italics
added].

The question whether Watson lacked probable cause to believe that
Johnson presented a threat of injury is unanswered by the Second Amended
Complaint.  It alleges facts about what was happening "When Johnson began to
drive his car in reverse", and "just prior to Johnson driving in reverse to
flee the scene", (Second Amended Complaint, ¶10) but it alleges nothing about
the unfolding facts as of the time of the shooting, nothing about where
Williams was in relation to the car at the moment of the shooting, and

therefore nothing that sheds light on whether Officer Watson lacked probable cause, *at the moment of the shooting*, to believe Williams was in danger of death or injury.[1]

The relevant time in judging whether officers act unreasonably when they exercise deadly force is the time immediately before the exercise of deadly force, at the moment of the use of force.  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Graham v. Connor, 490 U.S. 386, 395 (1989).  For claims of excessive force the standard of reasonableness ***at the moment*** applies.  See id.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.*  This Court in its Memorandum Opinion and Order dated May 28, 2014, p. 5, cited Elliott v. Leavitt, 99 F.3d 640 (4th Cir. 1996), for the same proposition, that the reasonableness of the use of force is determined based on the information available to the officer "at the moment" force is employed.

In Greenidge v. Ruffin, 927 F.2d 789, 791-92 (4th Cir. 1991), the Fourth Circuit reiterated that the focus should be on the circumstances at the moment force is used.  In Greenidge, an officer witnessed two individuals performing an illegal sex act in the car.  The officer drew her revolver when neither responded to her order to place their hands in clear view.  With her police badge hanging from her neck, the officer opened the car door with her left hand, identified herself as a police officer, and ordered the two

---

[1]   The Second Amended Complaint alleges that "just prior to the shooting" Johnson had a relaxed, casual, nonthreatening appearance and posture (¶5) and that various things "tightly confined" Johnson's vehicle (¶7), but there is no allegation about what Johnson was doing or where Williams was "just prior to the shooting."

passengers to place their hands in view.  The officer then pointed her drawn revolver and repeated the order to passengers to place their hands in clear view.  Ignoring the second order, one of the passengers reached for a long cylindrical object behind the seat.  Although the object turned out to be a wooden nightstick, the officer believed that it was a shotgun and fired in self-defense.

The Greenidge court referenced the Seventh Circuit's time frame for determining reasonableness in Ford v. Childers, 855 F.2d 1271, 1275 (7th Cir. 1988).  In Ford, the court held that the reasonableness objective standard requires that the officer's "liability be determined exclusively upon an examination and weighing of the information [the officers] possessed immediately prior to and at the very moment [they] fired the fatal shots." Id.  In light of the Seventh Circuit's explicit time frame in determining reasonableness and the Supreme Court's focus on the very moment when an officer makes a split-second judgment, the court in Greenidge held that, "We are persuaded that events which occurred before [the officer] opened the car door and identified herself to the passengers are not probative of the reasonableness of [the officer's] decision to fire the shot.  Thus, the events are not relevant and are inadmissible." Greenidge, 927 F.2d 789, 792.

Plaintiff alleges that Williams and Watson agreed in advance that Williams would "sneak up" on the Johnson car from behind while Watson approached it from the front.  There is no constitutional violation arising from officers planning how they could best apprehend a suspect, even if they do not make a good plan.  And if the plan goes awry, the fact that it was a poor plan is not relevant to whether there was a constitutional violation. Moreover, the causal connection between the plan and the shooting is broken by the wrongful act of Johnson in fleeing.

Case law will not support a cause of action based on a theory that the defendants' actions, negligent, rule violations or otherwise, "manufactured" the circumstances that gave rise to a fatal shooting.  Courts have regularly rejected such a theory of liability.  Indeed, evidence that officers acted incorrectly or negligently in creating such a situation is held not relevant.

In *Drewitt v. Pratt*, 999 F.2d 774 (4th Cir. 1993) a Norfolk police officer working off-duty as a part-time security guard observed a car being driven recklessly.  Intending to arrest the driver the officer ran toward the vehicle with his service revolver drawn.  The officer was not in uniform and did not display his badge, which he was carrying in his pocket.  The vehicle came to a stop and the officer crossed in front of it to approach the driver's side at which point the vehicle headlights came on, and the vehicle proceeded toward the officer.  The officer then fired one shot through the windshield of the car, and as the officer fell off the hood of the car a second bullet was accidently discharged.  Both bullets hit the plaintiff.  In affirming the District Court's decision to dismiss the complaint against the officer, the Fourth Circuit noted that the officer's failure "to display his badge when announcing himself as a police officer and demanding [the plaintiff] to stop his vehicle is irrelevant to the issue of whether <u>at the moment of the shooting</u> [the officer] had probable cause to believe that [the plaintiff] posed a threat of death or serious bodily harm."  999 F.3d at 780 [emphasis added].

The <u>Drewitt</u> Court quoted with approval from <u>Fraire v. City of Arlington</u>, 957 F.2d 1268 (5th Cir.1992), in which the court made clear that a claim that the defendant manufactured the circumstances giving rise to a fatal shooting does not present a constitutional violation.

In <u>Fraire</u>, the court specifically dealt with the allegation that a police officer's failure to adhere to standard police procedure created a

dangerous situation which led to his shooting of the plaintiff.  A police

officer was dressed in plain clothes and driving an unmarked car when he

observed a pickup truck engage in reckless maneuvers.  On several occasions

the officer attempted to get the pickup truck to stop.  The pickup truck led

the officer through a number of residential neighborhoods, occasionally

stopping and then driving off again.  Eventually, the officer was standing in

front of the pickup truck and ordering it to stop when the truck began

heading directly toward the officer.  The officer fired a shot, which hit and

killed the driver.  An internal affairs investigation exonerated the officer

on the charge of using excessive force, but said that while the officer's

actions demonstrated no policy violations, there were tactical errors that

might have possibly affected the outcome of the incident.  _Fraire_, 957 F.2d

at 1272.  In resolving the issues the Court held:

> The Plaintiffs have charged that the force [the
> officer] employed was excessive, at least in part
> because [the officer] may not have followed established
> police procedures in displaying his badge and
> identifying himself while in plain clothes.  The
> implication is that [the officer] thereby <u>manufactured
> the circumstances that gave rise to the fatal shooting.</u>
> . . . The constitutional right to be free from
> unreasonable seizure has never been equated by the
> Court with the right to be free from negligently
> executed stop or arrest.  There is no question about
> the fundamental interest in a person's own life, but it
> does not follow that a negligent taking of life is a
> constitutional deprivation.

_Fraire_, 957 F.2d at 1275-76 (citing _Young v. Killeen_, 775 F.2d 1349, 1353 (5th

Cir. 1985)) [emphasis added].  It is the "manufactured" language emphasized

above which the Fourth Circuit quoted in _Drewitt_, 999 F.2d at 779.

Plaintiff also alleges that Johnson did not intend to harm anyone.

Second Amended Complaint, ¶11. How plaintiff can know this is not apparent,

since Mr. Johnson is not available to say.  He also says, "Upon information

and belief, Johnson was at no point aware that Williams was present at the

scene." Johnson has also been unable to say anything about this, and it is not clear what information and belief would support it. Facts pled upon information and belief can sometimes be sufficient to survive a 12(b)(6) motion, but only if the facts pled are peculiarly within the knowledge of the defendant, or if they rest on factual information that makes the inference of culpability plausible. Daly v. Virginia, 2014 WL 2759078 (E.D.Va. June 17, 2014), at n.3, citing Arista Records LLC v. Doe, 604 F.3d 110, 120 (2d Cir. 2010). Accord, Boy Blue v. Zomba Recording, LLC, 2009 WL 2970794 (E.D.Va.)(pleading upon information and belief survives 12(b)(6) challenge where facts establishing the knowledge of the relationship or expectancy on the part of the interferor could at this stage of the proceedings be entirely within the possession of the opposing parties). Here, Johnson's ignorance of Williams' presence could not be peculiarly in the knowledge of defendants, and if there is factual information that makes the inference plausible, consistent with Ashcroft v. Iqbal, the facts should be pled. No facts are pled which support the conclusion that Johnson was unaware that Williams was on the scene.

Moreover, the defendants' conduct is to be judged objectively based on their perceptions at the scene, so that Johnson's intent or knowledge is not relevant.

Plaintiff continues to allege that the officers violated safety rules of police procedure and that their use of excessive force was the result of errors and recklessness. Defendants reiterate their arguments first asserted in their brief of March 13, 2014, to the effect that violation of police rules is not the test of a constitutional violation, Whren v. United States, 517 U.S. 806, 815 (1996); Thompson v. City of Chicago, 472 F.3d 444, 454 (7th Cir. 2006); Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003); Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005); Romero v.

10

<u>Board of County Com'rs of County of Lake, State of Colo.</u>, 60 F.3d 702 (10th
Cir. 1995); <u>and</u> that negligence is not the test for liability under §1983,
<u>City of Canton v. Harris</u>, 489 U.S. 378 (1989); <u>Daniels v. Williams</u>, 474 U.S.
327 (1986); <u>Jones v. Wellham</u>, 104 F.3d 620, 627 (4th Cir. 1997); <u>Brown v.
Winders</u>, 2011 WL 4828840 (E.D.N.C.))(citing <u>Franks v. Delaware</u>, 438 U.S. 154,
171 (1978)); <u>accord</u>, <u>Baker v. McCollan</u>, 443 U.S. 137, 146 (1979).

In ruling on the defendants' previous motions to dismiss, the Court
gave plaintiff clear guidance on what he must plead, focusing on the time
"immediately prior to the shooting" and "when he was shot".  Memorandum
Opinion and Order at 5-6.  Plaintiff goes to some length to lay the scene for
how the parties got to where they were at the time Mr. Johnson began to flee
by backing up his car, but the Second Amended Complaint is silent about what
were the facts at the moment the deadly force was applied.  Without these
facts, the Court is in no position to judge whether it can be plausibly
alleged that Watson lacked probable cause to believe that Johnson's actions
presented a threat of death or serious injury to Williams, no position to
judge whether it can be plausibly alleged that, "Watson knew that firing his
weapon under the circumstances was unconstitutional" or that, "It was
unreasonable for Watson under the circumstances to believe that firing his
weapon would effectively prevent harm," as asserted in paragraph 11 of the
Second Amended Complaint.

With the first two complaints, it appeared that plaintiff's theory was
that Watson was in harm's way, that is, in danger, because he "walk[ed]
closely and directly behind a vehicle knowing that its only means of egress
was to back up," and that he had thereby manufactured the circumstance in
which he was in danger and Watson shot Johnson to protect Williams from that
danger.  Of course, the danger was not apparent, because the original two

complaints did not say that Johnson had actually reversed his vehicle, although plaintiff eventually supplied that fact on brief.

Now, he supplies the fact that Johnson was fleeing by slowly backing up his car, but he is much less clear about Williams' location and much less clear about whether Williams was in danger.  He sums up his factual contentions about Williams by saying, "Williams unreasonably placed himself <u>near</u> the path of Johnson's vehicle, when he knew his actions <u>could</u> prompt Watson to use deadly force."  Second Amended Complaint, ¶13 [emphasis added]. This is insufficient to state a claim, even if there were no plausibility requirement.

What is plaintiff's theory of the case?  Was Williams in danger of injury or death <u>at the moment of the shooting</u>?  Was Williams hit by the Johnson car, was he run over by the Johnson car, was he about to be run over by the Johnson car <u>at the moment of the shooting</u>?  What facts did Watson perceive <u>at the time of the shooting</u>?  Is it contended that Williams, though <u>near</u> the path of the Johnson car, was in no actual danger?  Is it contended that <u>at the time of the shooting</u> Williams was in the path of the Johnson car but sufficiently far away that he was in no danger?

Plaintiff's allegation of "pretext" suggests that Williams was in no danger when Watson fired his weapon, but nothing about the Second Amended Complaint makes plausible the contention that Watson shot for no reason.  And if Williams was in no danger at the moment of the shooting, the allegations that Williams "set in motion" the use of deadly force cannot withstand plausibility analysis.

<b>CONCLUSION</b>

WHEREFORE, defendants Matthew Watson and Mathew Williams pray the court will dismiss Count I of the Second Amended Complaint with prejudice and award them judgment thereon.

**MATTHEW WATSON**
**MATHEW WILLIAMS**

_____/s/_____
Melvin Wayne Ringer
  Chief Deputy City Attorney
Virginia Bar number 20141
wayne.ringer@norfolk.gov
Tasha D. Scott
   Assistant City Attorney
Virginia Bar number 68643
tasha.scott@norfolk.gov
Attorneys for defendants Matthew Watson
   and Mathew Williams
City Attorney's Office
810 Union Street
Norfolk, VA 23510
Phone: 757-664-4215
Fax:  757-664-4201

## CERTIFICATION

    I hereby certify that on this 7th day of July, 2014, I will
electronically file the foregoing with the Clerk of Court using the CM/ECF
system, which will then send a notification of such filing (NEF) to the
following:

    John M. Cooper, Esq.
    Virginia Bar number 29064
    jcooper@cooperhurley.com
    William F. O'Mara, Jr., Esq.
    Virginia Bar number 77146
    bomara@cooperhurley.com
    Attorneys for plaintiff
    Cooper Hurley
    2014 Granby St. Ste. 200
    Norfolk, Virginia 23517
    Phone: 757-455-0077
    Fax: 757-455-8274

_____/s/_____
Melvin Wayne Ringer
  Chief Deputy City Attorney
Virginia Bar number 20141
wayne.ringer@norfolk.gov
Tasha D. Scott
   Assistant City Attorney
Virginia Bar number 68643
tasha.scott@norfolk.gov
Attorneys for defendants Matthew Watson
   and Mathew Williams
City Attorney's Office
810 Union Street
Norfolk, VA 23510
Phone: 757-664-4215
Fax:  757-664-4201