IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BENJAMIN NEWSOME, Administrator of
the Estate of Joshua Johnson,

     Plaintiff,

v.              Civil Action No. 2:14cv94

MATTHEW WATSON,

And

MATHEW WILLIAMS,

     Defendants.

<u>PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNT I
OF THE SECOND AMENDED COMPLAINT PURSUANT TO RULE 12 (b)(6)</u>

   COMES NOW the plaintiff, Benjamin Newsome, Administrator of the Estate of Joshua

Johnson, by counsel, and for his Brief in Response to Defendants' Motion to Dismiss Count I of

the Second Amended Complaint Pursuant to Rule 12(b)(6), states as follows:

Statement of the Case

   Plaintiff Administrator brought this wrongful death action on behalf of the Estate of

Joshua Johnson, alleging a common law tort claim and Constitutional violations pursuant to 42

U.S.C. §1983.  On May 20, 2013, at approximately 2:40 p.m., Joshua Johnson (hereinafter

"Johnson" or the "Decedent") in, or around, the drive-through lane of a bank located in the 2000

block of Colonial Avenue in the City of Norfolk, Virginia, was shot and killed while Defendant

Matthew Watson (hereinafter also "Watson") and Defendant Mathew Williams (hereinafter also

"Williams") were arresting him. (Second Amended Complaint ¶ 4).  At all relevant times,

1

Watson and Williams were employed as police officers for the City of Norfolk, Virginia, and acting under the color of law.  (Second Amended Complaint ¶¶ 1 and 14).

The circumstances surrounding the use of deadly force upon the Decedent include the following:

At all relevant times prior to being fired upon by Watson, Johnson was the driver of a car in the closest drive-through lane to the bank building located at the corner of Colonial Avenue and 21st Street in the City of Norfolk, Virginia, and had a single passenger.  (Second Amended Complaint ¶¶ 4 and 6).  The bank building and cashier were to Johnson's immediate left, and a brick column and a raised curb island separated the next lane over to his right. (Second Amended Complaint ¶ 4).  Directly behind the Johnson car at a short distance was a sidewalk, plantings, and an abutting curb with a curve/teardrop shape, which extended to the rear of the Johnson car and past the edge of the bank building.  (Second Amended Complaint ¶¶ 4 and 7).  If the Johnson car went directly in reverse without angling, the car would run into these obstacles.  (Second Amended Complaint ¶¶ 4 and 7).

At all relevant times, Watson and Williams were arresting Johnson for an alleged non-violent property crime at the bank.  (Second Amended Complaint ¶ 4).  Williams, by agreement and in concert with Watson, exited the police cruiser and concealed himself behind the bank building to the rear of the Johnson car. (Second Amended Complaint ¶¶ 4 and 13).  Williams and Watson agreed to have Williams conceal himself from Johnson's view by using the edge of the bank building to Johnson's rear. (Second Amended Complaint ¶6).  Watson then positioned his police cruiser to the front of Johnson's car.  (Second Amended Complaint ¶7). Defendants' placement of the police cruiser to the front of the Johnson vehicle, along with the described configuration of the bank building and the layout of the drive-through lane, effectively

2

barricaded the Johnson car so that reversing was his only means of egress.  (Second Amended Complaint ¶¶ 4 and 7).

At no point was Johnson armed, nor did he appear to be armed, nor did he at any point make a threatening gesture toward anyone, including the Defendants. (Second Amended Complaint ¶5).  At no point did Johnson act aggressively toward the Defendants, nor did Johnson act in a way to give either Defendant reason to believe that Johnson presented a significant risk of serious bodily harm. (Second Amended Complaint ¶5).  In fact, just prior to the shooting, Johnson had a relaxed, casual, and nonthreatening appearance and posture. (Second Amended Complaint ¶5).  At no point before or during the subject shooting was Johnson's passenger aware of Williams' presence sneaking up from behind the car, and, upon information and belief, Johnson was at no point aware that Williams was present at the scene. (Second Amended Complaint ¶6).

Once the Johnson car was barricaded, with Williams using the edge of the bank building to conceal himself from Johnson's rearview, Watson exited his police cruiser and approached the Johnson car.  (Second Amended Complaint ¶4).  At no point did Johnson ever drive his vehicle toward Watson. (Second Amended Complaint ¶8).  Instead, in an apparent attempt to flee the scene following an alleged non-violent property crime, Johnson checked his rearview mirror and looked over his right shoulder before slowly backing away from Watson.  (Second Amended Complaint ¶8).  Watson then followed the slowly backing Johnson with his service firearm drawn.  (Second Amended Complaint ¶8).   Johnson backed the vehicle so slowly that Watson was able to keep pace on foot.  (Second Amended Complaint ¶8).  The surrounding configuration of the bank building, drive-through and parking lot, with a curve/teardrop shaped

curb and plantings, did not permit high speed operation of the vehicle the direction Johnson

traveled. (Second Amended Complaint ¶9).

Additionally, just prior to Johnson driving in reverse to flee the scene, Williams watched

from several feet away from the edge of the building, which was several yards from the rear of

the Johnson vehicle, creating a large and safe distance between the rear of the Johnson vehicle

and Williams. (Second Amended Complaint ¶10).  When Johnson began to drive his car in

reverse, Defendant Williams was a sufficient distance from the vehicle as it moved slowly

backward that it did not present circumstances in which Watson reasonably should have believed

that Johnson presented a significant threat of serious bodily harm to Williams.  (Second

Amended Complaint ¶10).

Despite Johnson operating the vehicle at a speed and in a manner that presented no

serious threat to the Defendants, Watson shot and killed Johnson with Williams in his line of fire.

(Second Amended Complaint ¶11). It was unreasonable for Watson under the circumstances to

believe that firing his weapon would effectively prevent harm, especially when he knew

Williams was in his line of fire. (Second Amended Complaint ¶11).   Any serious bodily injury

inflicted upon Williams was caused by a bullet fired from Watson's gun, and not the Johnson

vehicle.  (Second Amended Complaint ¶11).   Watson knew that firing his weapon under these

circumstances was unconstitutional and in violation of the clear rule that the police cannot use

deadly force on an fleeing, unarmed and non-threatening arrestee.  (Second Amended Complaint

¶11).

In the alternative, and to the extent that the Defendants claim that Williams was at some

point close to the path of the slowly reversing Johnson vehicle, it is alleged that Williams left

from several feet from behind the edge of the bank building, which was also several yards from

the rear of the Johnson vehicle, and a position of safety. (Second Amended Complaint ¶10). Williams left that position of safety and approached the vehicle from Johnson's left, which was his rear blind spot as he looked over his right shoulder to slowly back his vehicle. (Second Amended Complaint ¶¶10 and 12). The Defendants' plan for arresting Johnson, with Williams leaving a position of safety and approaching Johnson from the rear, provided Johnson no opportunity to react to Williams' presence. (Second Amended Complaint ¶13).

Under these alternately pled facts, Williams unreasonably placed himself near the path of Johnson's vehicle leaving the Decedent no time to react when Williams knew his actions could prompt Watson to use deadly force. (Second Amended Complaint ¶13).

It is further alleged that Johnson never intended to harm anyone, including the Defendants, and that the officers, jointly and severally, violated safety rules of police procedure, and acted individually and in concert in an unreasonable, unconstitutional, and improper manner in their approach and seizure of Johnson, which directly and proximately caused his wrongful death. (Second Amended Complaint ¶¶ 4, 11, 13 and 14).

Authorities and Argument

The events described, if accepted as true, adequately set forth actionable Fourth Amendment violations against both Defendants. If the Plaintiff proves the Defendants acted unreasonably, in light of the surrounding circumstances, in their use of force against the Decedent, then viable causes of action exist under 42 U.S.C. §1983.

I.      Standard for Dismissal

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). All allegations in the complaint must be accepted as true. *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982). "The complaint is to

be liberally construed in favor of plaintiff." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint… it does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Also, a motion to dismiss must be assessed in light of the pleading standards provided by Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P.* 8. "[W]hether a complaint sufficiently states a claim upon which relief can be granted is governed by the Supreme Court's plausibility pleading framework." *Stevenson v. City of Seat Pleasant*, ___ F.3d ___ (4th Cir. 2014) (No. 12-2047: published opinion decided 2/21/2014); *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleadings of specifics, but only enough facts to state a claim to relief that is plausible on its face."). This analysis is context specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

II.     Plaintiff Has Stated a Claim Upon Which Relief May be Granted

42 U.S.C. §1983, a federal civil rights statute, states that every person who under the color of state law "subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights… secured by the Constitution and laws, shall be liable to the party injured in any action at law…." 42 U.S.C. §1983.

The Fourth Amendment guarantees to everyone freedom from the use of objectively unreasonable force by police in effecting arrests. *See Graham v. Connor*, 490 U.S. 386 (1989);

*see also Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994).  "This settled authority makes clear that the constitution permits law enforcement agents to use only objectively reasonable force in making an arrest.  The use of any greater force is unconstitutionally excessive and gives rise to a §1983 claim for damages." *Heflin v. Town of Warrenton*, 944 F. Supp. 472, 475 (E.D. Va. 1996).  To gauge objective reasonableness, "a court examines only the actions at issue and measures them against what a reasonable police officer would do under the circumstances." *Rowland*, 41 F.3d at 172.

  *Tennessee v. Garner*, 471 U.S. 1, 3 (1985) provides the controlling standard to be applied to this case.  In *Garner*, the Supreme Court held that it is constitutionally unreasonable to use deadly force to prevent escape by a non-violent suspected felon, unless (1) such force is necessary to prevent escape, and (2) the officer has probable cause to believe the suspect poses a <u>significant</u> threat of death or serious physical harm to the officer or others.  The Supreme Court defines probable cause as a "substantial basis" or "fair probability."  *Illinois v. Gates*, 462 U.S. 213, 246 (1983).

  Plaintiff's excessive force claims are well-recognized under the law.  Relief can be granted when deadly force is used upon a fleeing, non-violent suspected felon absent a finding that an officer possessed an objectively reasonable belief the suspect posed a significant threat of death or serious bodily harm.  Plaintiff's allegations contained in his Second Amended Complaint fit these standards, and address the deficiencies cited by the Court in its May 28, 2014 Order.

  a.  Defendant Watson

7

Acting under the color of law, Defendant Watson used deadly force to apprehend the Decedent, who was fleeing and suspected of a non-violent property crime.  Deadly force under the circumstances as alleged is objectively unreasonable and violates the Fourth Amendment.

More specifically, it is alleged that Watson barricaded the Decedent by placing his patrol car in front of the Johnson vehicle, which also had the bank building to its left and a brick column and curb to its right.  Watson also acted in concert to have Williams approach the Johnson vehicle from behind and conceal himself from Johnson's view using the edge of the bank building.  Watson knew that Johnson's only means of egress would be to drive in reverse.

At no point was Johnson armed, nor did he appear armed.  At no point did Johnson make a threatening gesture toward anyone, including Watson and Williams.  Johnson's demeanor just prior to the shooting was relaxed, casual and nonthreatening.  Johnson never drove toward Watson, but instead, in an apparent effort to flee the scene once Watson exited his police cruiser and brandished his service firearm, checked his rearview mirror then looked over his right shoulder before attempting to slowly back his vehicle out of the drive-through lane.  Johnson backed his vehicle so slowly that Watson was able to keep pace on foot with the Johnson vehicle as it backed away from him.  The contours of the drive-through lane, including the curved/teardrop shaped curb and plantings, tightly confined the Johnson vehicle preventing fast travel, which is consistent with Plaintiff's allegation that the vehicle was moving slowly.

Meanwhile, it is additionally alleged that just prior to Watson firing upon Johnson, Williams had concealed himself several feet to the rear of the bank building, which was additionally several yards to the rear of the Johnson vehicle, creating a large and safe distance between the rear of the Johnson vehicle and Williams.  It is alleged that Williams was a sufficent distance from the Johnson vehicle as it slowly moved backward that it did not present

8

circumstances in which a reasonable officer should have concluded that Johnson present a significant threat of serious bodily harm to Williams.

Even if a trier of fact were to conclude that Williams was in close proximity to the Johnson vehicle, the trier could conclude that Watson acted unreasonable in firing upon Johnson based upon Johnson's slow speed alone.   Despite these circumstances as alleged, Watson fired upon and killed Johnson, a nonthreatening fleeing suspect who had allegedly committed a non-violent property crime.   The facts, as alleged and reasonably inferred, fairly place Watson on notice of the nature of the claim against him, and, if proven, are facts upon which relief can be granted.   A trier of fact, under these circumstances can reasonably conclude that Watson lacked a substantial basis to believe that Johnson presented a significant threat of serious bodily harm.

b.   Defendant Williams

Plaintiff's Constitutional claim against Watson, which includes facts alleged in good faith based upon the evidence available to the Plaintiff at this time prior to discovery, are that Johnson's slow speed and Williams distance from the vehicle, if proven, make Watson's actions unreasonable and constitute a violation of 42 U.S.C. §1983.   Plaintiff has also pleaded in the alternative, which he is permitted to do at this stage, regarding his Constitutional claim against Williams.

Namely, it is alleged that Williams, acting under the color of law and in concert with Watson, caused Johnson to be shot to death as part of an unreasonable execution of a seizure of the Decedent.   While it is not alleged that Williams fired the fatal shots, the plain language of 42 U.S.C. §1983 imposes liability on an officer who "subjects [a citizen], *or causes [him] to be subjected*" to constitutional injury.   42 U.S.C. §1983. (Emphasis added).

9

Effective causation, or setting in motion, has been recognized by the First Circuit in the excessive force context.  In *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir. 1989), the Court held that the "requisite connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 561 (*citing Springer v. Seaman*, 821 F. 871 (1st Cir. 1987).  Effective causation has been recognized by the Fourth Circuit in §1983 cases involving First Amendment violations, deliberate indifference of prison officials, and in the context of municipal liability for policy creation.  *See Sales v. Grant*, 158 F.3d 768 (4th Cir.1998); *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984); *Spell v. McDaniel*, 824 F. 2d 1380 (4th Cir. 1987).

Additionally, if proven that Williams caused the decedent to be subjected to an unreasonable seizure by leaving a place of safety and placing himself in the path of the decedent's vehicle, then the resulting use of force is constitutionally infirm.  *See Kirby v. Duva*, 530 F.3d 475, 482 (6th Cir. 2008) ("Where a police officer unreasonably places himself in harm's way, his use of deadly force may be deemed excessive."); *Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993) (While discussing if an officer stepped in front of a rapidly moving vehicle leaving the decedent no time to brake, then "[i]f he did, then [the]Officer… would have unreasonably created the encounter that ostensibly permitted the use of deadly force to protect him, because the decedent would have been unable to react in order to avoid presenting a deadly threat ….").

The facts as pled in the alternative against Williams are that he, again acting in concert with Watson, exited the patrol car and concealed himself from Johnson's rearview by hiding behind the edge of the bank building, which was several yards from the rear of the Johnson

10

vehicle, and from where he watched Johnson.  It is further alleged that despite barricading Johnson and knowing his only means of egress was backward, Williams left a position of complete safety behind the edge of the bank building.  Accordingly, to the extent that he was in close proximity to the Johnson vehicle, Williams effectively caused and set in motion Watson's use of deadly force, when he knew he had concealed himself from Johnson's and his passenger's view, and approached the reversing vehicle from Johnson's left side and blind spot area as Johnson looked over his right shoulder to back out of the drive-through lane.  Williams acted unreasonably in creating the circumstances causing Watson's use of deadly force, and created a scenario in which Johnson had no opportunity to react to or avoid him.

Defendant Williams continues to rely heavily upon *Drewitt v. Pratt*, 999 F.2d 774 (4th Cir. 1993), a case in which a Norfolk police officer, not in uniform or displaying a badge, shot a man who struck the officer with his car. Relying on *Drewitt*, Williams argues that officer-created or "manufactured" circumstances giving rise to a shooting does not present a constitutional violation.  Plaintiff does not rely upon mere negligence, or violation of police procedure only to assign liability.  Plaintiff has alleged that Williams, acting in concert with Watson, caused the unreasonable use of deadly force.  In fact, the Court in the *Drewitt* case, while analyzing the reasonableness of the officer's use of force stated, "[c]ontrary to the district court's conclusion, however, we do believe that [the officer's] exact location in connection to Drewitt's vehicle at the time it sped forward is relevant to such issue." *Id.* at 780.[1]

It is alleged that Williams's actions were objectively unreasonable in causing the deadly use of force upon the Decedent.  If we accept as true that Williams left a place of safety and caused the unreasonable use of force, then relief can be granted.

---

[1] The *Drewitt v. Pratt* case was a review of a district court's summary judgment decision, not a Rule 12(b)(6) motion to dismiss.

11

Plaintiff acknowledges certain authority which may support a position that the mere fact that an officer violated a safety rule of police procedure may be inadmissible, or may not in and of itself amount to a constitutional violation; however, there is no authority rendering the actions of an officer which amount to a rules violation automatically irrelevant. These actions are a part of the totality of the circumstances which must be analyzed to determine if an officer acted objectively unreasonably. At this pleading stage, before discovery, plaintiff's allegations against Williams pose circumstances upon which relief can be granted.

The Defendants' Counsel's arguments about the particular facts and their interpretation would be more appropriate at the summary judgment phase. Plaintiff's current information is limited by the killing of the Decedent, but through discovery more details of who claims which actor was where and when will be revealed. At the pleading and motion to dismiss phase, Defendants' emphasis on the persuasiveness of Plaintiff's theory of the case is premature.

### Conclusion

Plaintiff has properly pleaded Constitutional claims against both defendants upon which relief can be granted. Accordingly, plaintiff respectfully submits that the Defendants' Motion to Dismiss Count I of the Second Amended Complaint, pursuant to Rule 12(b) (6), must be denied, and also requests that an initial pretrial conference be set and discovery commence.

In the alternative, if this Court elects to dismiss the 42 U.S.C. §1983 claims against both defendants, the plaintiff respectfully asks the Court to remand to state court the remaining battery claim.

BENJAMIN NEWSOME,
Administrator of the Estate of
JOSHUA JOHNSON

_____/s/_____
William F. O'Mara, Jr., Esquire

John M. Cooper
Virginia State Bar No. 29064
jcooper@cooperhurley.com
William F. O'Mara, Jr.
Virginia State Bar No. 77146
bomara@cooperhurley.com
*Counsel for Plaintiff*
COOPER HURLEY
2014 Granby Street, Suite 200
Norfolk, Virginia 23517
757-455-0077
757-455-8274 (facsimile)

Certification

I hereby certify that on this 17th day of July, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filed (NEF) to the following:

Melvin Wayne Ringer
Chief Deputy City Attorney
Virginia State Bar No. 20141
Wayne.ringer@norfolk.gov

Tasha D. Scott
Assistant City Attorney
Virginia State Bar No. 68643
Tasha.scott@norfolk.gov

City Attorney's Office
810 Union Street
Norfolk, Virginia 23510
757-664-4215
757-664-4201 (facsimile)
*Counsel for Defendants*

_____/s/_____<br>William F. O'Mara, Jr., Esquire